**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TARRANT COUNTY HOSPITAL DISTRICT d/b/a JPS HEALTH NETWORK; | § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. _____ |
| MCKESSON CORPORATION, ET AL. | § § | Jury Requested |
| Defendants. | § § § | |

**Notice of Removal**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant Walmart Inc. ("Walmart") hereby removes the above-captioned action currently pending in the 152nd Judicial District for Harris County, Texas, under MDL Pretrial Cause No. 2021-26465, to the United States District Court for the Southern District of Texas. In support of removal, Walmart provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basis Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

I.     **NATURE OF REMOVED ACTION**

1.     On or about April 30, 2021, Plaintiff Tarrant County Hospital District d/b/a JPS Health Network filed *Tarrant County Hospital District d/b/a JPS Health Network v. McKesson Corporation, et al.*, in the 96th Judicial District Court for Tarrant County, Texas. The court assigned the case Cause No. 096-325002-21. On May 3, 2021, Defendant CVS Pharmacy, Inc. ("CVS") filed a notice of transfer to the Texas Opioid MDL in the 152nd Judicial District Court of Harris County. The Master File No. of the Texas Opioid MDL is 2018-63587, and the MDL

Pretrial Cause No. for this action is 2021-26465.

2.      In its Original Petition ("Pet."), Plaintiff alleges claims against three different defendant groups: Manufacturer Defendants, Distributor Defendants, and Pharmacy Defendants (including Walmart).  On occasion, Plaintiff refers to the Pharmacy Defendants together as the "Pharmacies."  *See, e.g.*, Pet. ¶ 63.

3.       Plaintiff brings claims related to prescription opioid medications, including claims for (1) public nuisance, (2) "statutory nuisance," and (3) civil conspiracy.  *Id.* ¶¶ 52–68. Plaintiff seeks damages and equitable relief for alleged injuries it sustained as a result of Defendants' alleged conduct.

4.      The thrust of Plaintiff's allegations against the Pharmacy Defendants is that they "[i]gnor[ed] their legal obligations" to "provide effective controls and procedure[s] to guard against theft and diversion of controlled substances and to notify the DEA of suspicious orders." *Id.* ¶ 50.

5.      Plaintiff's claims allege a federal question because they are premised on the breach of duties whose only possible source is the Controlled Substances Act, 21 U.S.C. §§ 801, et seq. ("CSA") and its implementing regulations.  Plaintiff identifies no state law—common law or statute—that gives rise to these purported duties regarding the distribution of opioids that Pharmacy Defendants allegedly breached.

6.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to District Judge Dan Polster of the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1380 (J.P.M.L. 2017).

7.     Further underscoring the federal source of duties Plaintiff alleges are the more than 3,000 opioid-related actions currently pending in the MDL, thousands of which transferred following removal from state court to federal court, including actions originally filed within the Fifth Circuit.[1]  Plaintiff's allegations are virtually identical to the obligations certain Defendants in the MDL are purportedly bound to by virtue of the CSA and its regulations.  *See, e.g.*, 21 U.S.C. § 823(b), (e) (identifying the question whether a distributor has maintained "effective control against diversion" as one factor the DEA Administrator may consider in evaluating whether the distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B) (setting penalty for failure to comply with requirements related to suspicious orders or for failing to "maintain effective controls against diversion of opioids"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA).

8.     Because any duties relating to diversion of controlled substances and reporting and shipping of "suspicious" opioid medication orders arise, if at all, exclusively from federal law—specifically, the CSA and its implementing regulations—Plaintiff necessarily pleads that alleged violations of federal law form the basis for its claims.

---

[1] *Ellis Cty. v. Walgreens Boots Alliance, Inc.*, No. 4:19-cv-02256 (S.D. Tex.) (**Exhibit E**); *Rockwall Cty. v. Purdue Pharma L.P.*, No. 4:19-cv-02181 (S.D. Tex.); *Cty. of Jim Wells v. CVS Pharmacy, Inc.*, No. 4:19-cv-03580 (S.D. Tex.) (**Exhibit F**); *Cty. of Jim Hogg v. Purdue Pharma L.P.*, No. 4:19-cv-2816 (S.D. Tex.) (**Exhibit G**); *Cty. of Williamson v. Walgreens Boots Alliance*, No. 4:19-cv-3299 (S.D. Tex.) (**Exhibit H**); *Cty. of Angelina v. Allergan PLC*, No. 4:19-cv-03590 (S.D. Tex.) (**Exhibit I**); *Cty. of Burleson v. Purdue Pharma L.P.*, No. 4:19-cv-03845 (S.D. Tex.); *Dallas Cty. Hosp. Dist. – Parkland Memorial Hosp. v. Amneal Pharm., Inc.*, No. 4:19-cv-04834 (S.D. Tex.) (**Exhibit J**).

9.      Walmart has not responded to the Original Petition in state court because Walmart has not been served.

## II.      TIMELINESS OF REMOVAL

10.      Walmart has not yet been served with Plaintiff's Original Petition.  Therefore, this removal is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

11.      In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders in the state court action are attached as exhibits.

## III.      PROPRIETY OF VENUE

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the 152nd Judicial District Court of Harris County, Texas, where the state court action was pending prior to removal, is a state court within this federal district and division.

## IV.      BASIS OF REMOVAL

13.      Removal is proper pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, et seq.[2]

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial

14.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

15.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002).  The artful-pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors."  *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").  "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum."  *BIW Deceived*, 132 F.3d at 831.

16.     Even when state law creates causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or

---

construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565 U.S. 368, 379 (2012) (brackets and citations omitted).

laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

17.    "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314).

18.    When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on the failure to satisfy a standard of care established in by a federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723.  A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question.  *Id.*; *see also Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170–71 (5th Cir. 2012) (concluding plaintiff's state law claims gave rise to federal question jurisdiction because the resolution of claims relied on the existence of a duty created by federal law).

19. As set forth below, Plaintiff's claims meet all four requirements.

20. Although Plaintiff ostensibly pleads its theories of recovery against the Pharmacy Defendants as state law claims, the underlying theory of liability is based on their alleged violations of federal law or alleged duties arising out of federal law, specifically the federal CSA, and its implementing regulations.

21. For instance, Plaintiff pleads that the Pharmacy Defendants violated duties that could only arise under federal law with, among others, the following allegations:

   a. "Defendants are required by law to provide effective controls and procedure to guard against theft and diversion of controlled substances and to notify the DEA of suspicious orders." Pet. ¶ 50.

   b. "Ignoring their legal obligations, Defendants allowed widespread diversion to occur in Tarrant County despite access to information that clearly revealed that it was taking place." *Id.*

   c. Alleging that Defendants "fail[ed] to monitor, detect, investigate, and report suspicious orders of prescription opiates . . . . ." *Id.* ¶ 66.

   d. "Defendants failed to implement policies and procedures to document the flow of opioids from the point of manufacture throughout the distribution network." *Id.* ¶ 67.

   e. "Defendants failed to properly train or require employees and affiliates to identify, report and investigate any improprieties in the flow of opioids." *Id.*

22. Plaintiff contends "[t]here is no relief sought on the basis of federal law." *Id.* ¶ 8. However, as explained below, the source of the asserted legal duties to prevent diversion and to monitor and investigate suspicious orders of controlled substances must be the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. § 1301.71; *id.* § 1301.74(b).

23. Plaintiff's theories of liability against the Pharmacy Defendants, as pleaded in the Complaint, are thus predicated on allegations that Defendants breached alleged duties under the

CSA to implement effective controls against diversion and to monitor and investigate suspicious orders for prescription opioids.

24.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

25.     **First**, Plaintiff's claims "necessarily raise" a federal question because its "asserted right to relief under state law requires resolution of a federal question" regarding the asserted duties to monitor and investigate suspicious orders.  *R.I. Fishermen's All., Inc. v. R.I. Dep't of Env't Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *see also Tenn. Gas Pipeline Co.*, 850 F.3d at 722–23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care  contained in federal law); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles." (emphasis added)).

26.     Plaintiff's claims against the Pharmacy Defendants require Plaintiff to establish that they breached duties arising under federal law, by failing to monitor shipments of otherwise lawful orders of controlled substances into Texas and other states.

27.     Although Plaintiff refers generally to "Texas law," Pet. ¶ 53, the Petition entirely fails to cite any Texas statutory or regulatory provision imposing an independent duty on distributors of prescription medications to monitor prescription orders in the distribution of prescription opioids.  This is because, as explained above, these duties necessarily arise under the federal CSA and regulations. The Texas CSA merely requires distributors to comply with their reporting obligations under federal law. *See* Tex. Health & Safety Code § 481.067(a) ("A [registrant] . . . shall keep records and maintain inventories in compliance with recordkeeping and inventory requirements of federal law. . ."); *id.* § 481.0766(a) (requiring a distributor to report "to the board the distribution of all Schedules II, III, IV, and V controlled substances by the distributor to a person in this state. The distributor shall report the information to the board in the same format and with the same frequency as the information is reported to the [DEA]").  Thus, the only legal basis for the asserted duties on which Plaintiff's claims rest (i.e., the duties to monitor and investigate suspicious orders for prescription opioids) is federal law in the form of the CSA and implementing regulations.  In other words, Plaintiff has pled federal questions dressed up as state law claims.

28.     While plaintiffs are generally masters of their complaints, and it "may avoid federal jurisdiction by ***exclusive*** reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal duties as the basis for its state-

law claims.[3]  And, once again, Plaintiff "may not defeat removal by artfully omitting reference to federal questions, that is, bringing a cause of action in an effort to avoid federal law." *Kimmel v. Bekins Moving & Storage Co.*, 210 F. Supp. 2d 850, 852 (S.D. Tex. 2002).

29.     In sum, despite Plaintiff's attempt to disguise the federal question, the Complaint necessarily raises a federal issue: whether the Walmart and the Pharmacy and Distributor Defendants violated the CSA.

30.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether Walmart or the other Distributor or Pharmacy Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

31.     **Third**, this federal question presented by Plaintiff's claims is "substantial."[4]  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the

---

[3] Furthermore, it is not necessary for federal jurisdiction that Walmart establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction:  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against the Pharmacy Defendants, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a); *see also R.I. Fishermen's All.*, 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

- 10 -

issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260–61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).   As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312; *see also Willis of Tex., Inc. v. Stevenson*, No. H-09-cv-0404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit.").

32.     Plaintiff's theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances.  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

33.     The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *New York ex rel. Jacobson v. Wells*

- 11 -

*Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317–18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *R.I. Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in Grable." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

34.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4–5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

35.     Removal is especially appropriate here because Plaintiff's action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that Defendants' alleged conduct "construct[ed] a population of citizens whose initial use of opioids was legal and legitimate but was transformed

into an addiction."  Pet. ¶ 44.  And Plaintiff relies on enforcement actions and settlements in jurisdictions outside of Texas to establish wrongful conduct.  *See, e.g.*, *id.* ¶¶ 14 n.4, 16 n.6.

36.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA's authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal courts and the federal agency tasked with enforcing the CSA—the DEA—apply them.  Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

37.     In sum, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted));

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "Grable test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

38.     To the extent that the Court determines that some, but not all, of Plaintiff's claims raise a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction.  28 U.S.C. § 1367(a).

**V.      COMPLIANCE WITH LOCAL RULES**

39.     Pursuant to Rule 81 of the Local Rules, Walmart provides the following index of matters being filed:

| | |
|---|---|
| **Exhibit A:** | Civil Cover Sheet |
| **Exhibit B:** | Plaintiff's Original Petition |
| **Exhibit C:** | State Court Docket Sheet |
| **Exhibit D:** | List of all Counsel of Record |
| **Exhibits E – J:** | Exemplar Cases Within the 5th Circuit Transferred to MDL |

**VI.     OTHER REMOVAL ISSUES**

42.     Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

43.     Walmart is not aware of any other defendant having been properly joined and served, therefore no defendant's consent is required for removal.  *See* 28 U.S.C. § 1446(b)(2)(A).  Counsel for Walmart has reviewed the State Court docket (**Exhibit C**) and confirmed that it does not reflect that any defendants have been served.  *See Milstead Supp. Co. v. Cas. Ins. Co.*, 797 F. Supp. 569, 571–74 (W.D. Tex. 1992).

44.    By filing this Notice of Removal, Walmart expressly reserves, and does not waive, any and all defenses that may be available to it, including those related to personal jurisdiction and service of process.

45.    Pursuant to 28 U.S.C. § 1446(d), Walmart will promptly file a copy of this Notice of Removal with the clerk of the 152nd Judicial District Court of Harris County, where the action was pending prior to removal, and serve notice of the filing of this Notice of Removal on Plaintiff.

46.    Walmart reserves the right to amend or supplement this Notice.

**WHEREFORE**, Walmart Inc. removes this action, pending in the 152nd Judicial District Court of Harris County, under the MDL Pretrial Cause No. 2021-26465, to this Court.

DATED:  May 20, 2021

Respectfully submitted,

By: */s/ Elizabeth W. Scofield*
Elizabeth W. Scofield (Attorney-in-charge)
Texas Bar No.: 24079555
SDOT AD ID# 2227083
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002-2712
Telephone: (832) 239-3789
Facsimile: (832) 239-3600
Email: escofield@jonesday.com

Christopher Lovrien*
Erin Burke*
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: eburke@jonesday.com

James W. Carlson*
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219

Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: jamescarlson@jonesday.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Attorneys for Walmart Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2021, this instrument was served on the following counsel in compliance with Rule 5 of the Federal Rules of Civil Procedure via the Court's electronic filing system and certified mail.

Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Schyler P. Parker
State Bar No. 24092937
schyler.parker@wickphillips.com

WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789

ATTORNEYS FOR PLAINTIFF

*/s/ Elizabeth W. Scofield*
Elizabeth W. Scofield